**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**
EASTERN DIVISION

| | | |
|---|---|---|
| SHERYL RING, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 2022 cv 895 |
| | ) | |
| JEROME LARKIN *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**PLAINTIFF'S VERIFIED PETITION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff Sheryl Ring hereby respectfully moves this Honorable Court for an Order granting a temporary restraining order enjoining and prohibiting Defendants Jerome Larkin, John H. Simpson, and Timothy Bertschly (the "ARDC Defendants") from continuing to deliberately out Plaintiff and exclude gender identity discrimination from "sex discrimination" in Illinois Rule of Professional Conduct 8.4, and in support thereof states as follows:

**Introduction**

As alleged in the Verified Complaint, Plaintiff is a licensed attorney in the State of Illinois in good standing, who has no history of discipline. Plaintiff is also transgender. The Attorney Registration and Disciplinary Commission ("ARDC") is the Illinois agency responsible for regulating the practice of law pursuant to the Illinois Rules of Professional Conduct and prosecuting violations thereof. Defendants Larkin, Bertschly, and Simpson are the Administrator, President, and Vice President of the ARDC, respectively, and therefore responsible for its practices and policies.

Forty-seven states – all but Illinois, Alabama, and Mississippi – have taken steps to ban gender identity discrimination by judges and members of the bar towards litigants and attorneys.[1] For example, California, Pennsylvania, Colorado, and at least a dozen other states have expressly prohibited gender identity discrimination in their Rule of Professional Conduct 8.4. Other states, like Florida, that don't have explicit bans on gender identity discrimination have instead followed the rule enunciated by Justice Neil Gorsuch in *Bostock v. Clayton County*, 140 S. Ct. 1731, 1741 (2020): "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." *See, e.g., Florida Bar v. Kaplan,* No. 2017-70,019 (11 B).

Illinois, however, is different. The Illinois ARDC is the only Illinois government agency which refuses to ban discrimination on the basis of gender identity, even after *Hobby Lobby Stores, Inc. v. Sommerville*, 2-19-0362, at *1 (Ill. App. Ct. Aug. 13, 2021), reaffirmed the central *Bostock* holding in Illinois. Twice in Illinois' Rule 8.4 – in Rule 8.4(j), and in Comment 3 – the Rule prohibits discrimination on the basis of sex, but neither mentions gender identity and the ARDC refuses to include gender identity within the ambit of either provision. In fact, not only does the ARDC not protect transgender attorneys and litigants from discrimination, it takes affirmative discriminatory actions against transgender attorneys by its own admission. In a February 24, 2020 article entitled "Transcending the Binary: Inclusion for Transgenderand Non-Binary Attorneys," the ARDC noted that "we inadvertently "out" some transgender attorneys by publishing their former names."[2] Nevertheless, the ARDC continues to do so, having taken no action whatsoever

---

[1] This Court can take judicial notice of the court rules and decisions of other jurisdictions. *See Hartford Fire Ins. Co. v. Coastal Int'l, Inc.*, No. 14-cv-6196, at *2 n.1 (N.D. Ill. June 30, 2015).

[2] State of Illinois Office of the Illinois Courts. (2020, February 24). *Details: State of illinois office of the illinois courts*. Administrative Office of the Illinois Courts. Retrieved March 1,

to remedy this. Take, for example, Plaintiff's own ARDC record using the public search tool on the ARDC's website:



As such, transgender attorneys in Illinois are not even given the option of being closeted after transition: the ARDC ensures that all trans attorneys in Illinois are known to be trans, where

---

2022, from https://www.illinoiscourts.gov/News/426/Transcending-the-Binary-Inclusion-for-Transgenderand-NonBinary-Attorneys/news-detail/

Page **3** of **17**

they can be deadnamed and misgendered at will. The Plaintiff specified several examples in her verified complaint. Compl't at ¶ 34.

In short, the Illinois ARDC has created an apartheid legal system where transgender attorneys are mocked, harassed, and belittled without recourse. Worse, this harms their clients, who are forced to take their attorneys' gender identity into account when choosing a lawyer who is best able to represent them. When an attorney's "before" and "after" pictures can be shown to a judge by opposing counsel without recourse, when an attorney can be deadnamed and misgendered in front of a courtroom full of people, it negatively impacts both the client's case and the attorney's ability to prosecute that case. Worst of all, it means that transgender litigants who sue to vindicate their right to be free from discrimination under *Bostock* can be subjected to the very same conditions in a courtroom that gave rise to that suit in the first place.

> Injunctive relief, including the entry of a TRO, is warranted if the movant can make a threshold showing: (1) that the movant has some likelihood of success on the merits of the underlying litigation; (2) that no adequate remedy at law exists; and (3) that the movant will suffer irreparable harm if the injunction is not granted. If these three conditions are met, then the Court must balance the harm to the movant if the injunction is not issued against the harm to the defendant if it is issued improvidently and consider the interest of the public in whether the injunction is to be granted or denied.

*Crue v. Aiken*, 137 F. Supp. 2d 1076, 1083 (C.D. Ill. 2001). Each of these factors is met here. Transgender attorneys and litigants deserve equality in Illinois courts. The ARDC Defendants should be enjoined from preventing that equality.

## I. Plaintiff Has a Likelihood of Success on the Merits

For a temporary restraining order or preliminary injunction to issue, Plaintiff "must show that it has a 'better than negligible' chance of success on the merits of at least one of its claims. This is an admittedly low requirement and is simply a threshold question." *Girl Scouts v. Girl Scouts*, 549 F.3d 1079, 1096 (7th Cir. 2008).

The ARDC is an arm of the Illinois Supreme Court, but it is still bound by federal constitutional guarantees. We begin with the United States Supreme Court holding in *Shelley v. Kraemer*, 334 U.S. 1, 14-15 (1948), which expressly held that the action of state judicial officers is the action of the state capable of judicial redress:

> That the action of state courts and judicial officers in their official capacities is to be regarded as action of the State within the meaning of the Fourteenth Amendment, is a proposition which has long been established by decisions of this Court. That principle was given expression in the earliest cases involving the construction of the terms of the Fourteenth Amendment. Thus, in *Virginia* v. *Rives*, 100 U.S. 313, 318 (1880), this Court stated: "It is doubtless true that a State may act through different agencies, — either by its legislative, its executive, or its judicial authorities; and the prohibitions of the amendment extend to all action of the State denying equal protection of the laws, whether it be action by one of these agencies or by another." In *Ex parte Virginia*, 100 U.S. 339, 347 (1880), the Court observed: "A State acts by its legislative, its executive, or its judicial authorities. It can act in no other way." In the *Civil Rights Cases*, 109 U.S. 3, 11, 17 (1883), this Court pointed out that the Amendment makes void "State action of every kind" which is inconsistent with the guaranties therein contained, and extends to manifestations of "State authority in the shape of laws, customs, or judicial or executive proceedings." Language to like effect is employed no less than eighteen times during the course of that opinion.

*Shelley v. Kraemer*, 334 U.S. 1, 14-15 (1948). The ARDC, therefore, is no less a state agency because it is judicial in character; it is no less bound to follow federal law – like, for example - *Bostock v. Clayton County*, 140 S. Ct. 1731, 1738 (2020) – than any other state agency. "The

federal guaranty of due process extends to state action through its judicial as well as through its legislative, executive or administrative branch of government." *Shelley*, 334 U.S. at 15.

The ARDC's own actions in outing transgender attorneys like Plaintiff, and allowing other attorneys to do the same, demonstrate that Plaintiff has a likelihood of success on the merits on both her 42 U.S.C. 1983 and Fourteenth Amendment claims, as explained in *Arriaga v. Dart*, No. 20 C 4498, at *8 (N.D. Ill. Jan. 29, 2021):

> Unauthorized disclosure of private medical information by the state without a significant government interest violates the due process clause of the 14th Amendment. Arriaga plausibly alleges in her Complaint that (1) her transgender identity was something she kept private, (2) Defendants disclosed this information without her permission and without a significant state interest, and (3) disclosure of that private information was tantamount to disclosing medical information because anyone informed of her transgender identity would necessarily know of the prior medical interventions and therapy required for her gender transition. (Dkt. 1 at ¶¶ 18-25; 30). The right to medical privacy was also clearly established in 2018.

*Arriaga v. Dart*, No. 20 C 4498, at *8 (N.D. Ill. Jan. 29, 2021) (citing *Denius v. Dunlap*, 209 F.3d 944, 956 (7th Cir. 2000); internal citations and quotation marks omitted). But it goes farther than that. <u>By refusing to comply with *Bostock* or expressly protect gender identity and expression, the ARDC is issuing what is tantamount to an invitation to discriminate to the lawyers of this state,</u> and that is unlawful. The ARDC does not give transgender attorneys a choice: by their own admission in the 2020 article mentioned *supra*, Defendants know that transgender attorneys in Illinois face discrimination and that they out those attorneys publicly, subjecting them to that discrimination. Nevertheless, Defendants have taken no action to either stop outing transgender attorneys *or* to protect them from discrimination by stating that gender identity discrimination is prohibited under Rule 8.4 as 47 other states have done. In other words, the ARDC has created an

environment where all transgender attorneys *must* be out to the general public and have no recourse against the resulting discrimination. After all, Illinois attorneys cannot simply refuse to register with the ARDC.

Instructive here is *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1050 (7th Cir. 2017), in which the Seventh Circuit Court of Appeals found that discrimination against transgender persons on account of their gender identity is an unlawful violation of Constitutional equal protection guarantees. "The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike. . . . It therefore, protects against intentional and arbitrary discrimination." *Id*.

In order to defend its decision to out all transgender attorneys and allow discrimination against them, the ARDC must show that doing so "serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Id*. In the Circuit Court of Cook County, the ARDC argued that its policies were "for the benefit of the public as a whole." But transgender attorneys pose no danger to the public as a whole, nor should whether or not an attorney is transgender be of any moment to the public as a whole. It is the ARDC which has created the issue by forcing all transgender attorneys to be out to the public whilst simultaneously refusing to ban discrimination by attorneys based on gender identity and expression. There is no legitimate state justification for that kind of bigoted policy, nor is any important government objective achieved by requiring all transgender attorneys to be outed.³

---

³ Nor does a name change mean the public will be in any way deceived; after all, an attorney's history of discipline and insurance are also publicly available on the ARDC website, so there is no need to look up discipline under a different name.

"All persons, whether transgender or not, are protected from discrimination on the basis of gender stereotype." *Whitaker*, 858 F.3d at 1051. The mere fact that the ARDC thinks the public must be protected from transgender attorneys is exactly the kind of stereotype *Whitaker* prohibits. The ARDC does not identify the race or sexual orientation of attorneys to the public, and expressly prohibits discrimination on those grounds. Only transgender attorneys are outed to the public in such a way, and the ARDC treats transgender attorneys differently than any other group because no other group is allowed to be discriminated against in Illinois courts.

But even assuming *arguendo* this Court opted not to apply the heightened scrutiny test of *Whitaker*, the ARDC's policy still fails. "To state a class-of-one equal protection claim, an individual must allege that he was 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Barnes v. Lawrence*, No. 19-cv-00806-SMY, at *6 (S.D. Ill. Nov. 18, 2019). There is no rational basis for allowing discrimination against transgender and gender non-conforming attorneys but not any other protected classes. There is certainly no rational basis for outing transgender attorneys to the public knowing such discrimination exists.

But Plaintiff prevails for another reason as well. Defendant's policy of knowingly outing all transgender lawyers, regardless of whether or not they are closeted, and knowing that harm will result therefrom, constitutes compelled speech demanded solely of trans people. In short, Defendants require Plaintiff and other trans attorneys to out themselves and then speak on issues related to transness whether they want to do so or not. The choice of whether or not to be out is an expressive one, and therefore the Defendants' policy must meet a high burden indeed. "[W]here the government singles out expressive activity for special regulation to address anticipated harms,

the government must `demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Crue v. Aiken*, 137 F. Supp. 2d 1076, 1088 (C.D. Ill. 2001). There is no way the Defendants can point to a real harm remedied by their current policies towards transgender people.

The Seventh Circuit has made clear that gender identity discrimination is sex discrimination. *See Whitaker, supra; see also Students & Parents for Privacy v. U.S. Dep't of Educ.*, No. 16-cv-4945, at *8 (N.D. Ill. Dec. 29, 2017) ("discrimination against a transgender individual because of her gender-nonconformity is sex discrimination"). As such, a state agency's refusal to include gender identity within the ambit of "sex" is an unlawful violation of equal protection. *Id*. Plaintiff has demonstrated a likelihood of success on the merits.

## II. Plaintiff Has No Adequate Remedy At Law

It is well established that physical and emotional abuse constitute injuries for which there is no adequate remedy at law. *Hampton v. Baldwin*, No. 3:18-CV-550-NJR-RJD, at *31 (S.D. Ill. Nov. 7, 2018). Nor can money damages compensate Plaintiff for the continuing harm the ARDC causes by outing her to all persons every single day, or by allowing attorneys to misgender and deadname her every single day. *See Whitaker*, 858 F.3d at 1046. *See also Tay v. Dennison*, 457 F. Supp. 3d 657, 687-88 (S.D. Ill. 2020) ("money will not make Plaintiff whole or protect her from physical and emotional abuse.").

## III. Plaintiff Will Suffer Irreparable Harm

> The requirement of irreparable harm eliminates those cases where, although the ultimate relief sought is equitable, the plaintiff can wait until the end of trial to get that relief. Interim injunctive relief is

> only available if the plaintiff will suffer irreparable harm before final judgment is entered. This requires more than a mere possibility of harm. It does not, however, require that the harm actually occur before injunctive relief is warranted. Nor does it require that the harm be certain to occur before a court may grant relief on the merits. Rather, harm is considered irreparable if it 'cannot be prevented or fully rectified by the final judgment after trial.'

*Tay v. Dennison*, 457 F. Supp. 3d 657, 686 (S.D. Ill. 2020).

The Plaintiff here has satisfied this standard. Most courts in Illinois have now resumed in-person hearings, or will be doing so shortly.[4] The transphobia experienced by Plaintiff was limited to electronic fora during the pandemic, but will soon be in-person once again. That means questions about Plaintiff's genitalia are likely to return. That also means Plaintiff will again be outed to courtrooms full of people. That is not compensable by money damages, nor can Plaintiff simply receive money for each time an opposing counsel calls Plaintiff a man.

As the Appellate Court explained in *Lykowski v. Bergman*, 299 Ill. App. 3d 157, 165 (Ill. App. Ct. 1998), the ARDC serves multiple roles: to discipline attorneys, yes, but also to interpret the rules governing attorneys and to investigate potential violations. For example, in *Dowling v. Chicago Options Assoc*, 226 Ill. 2d 277, 293 (Ill. 2007), the Illinois Supreme Court discussed a "handbook" promulgated by the ARDC to govern advance retainer payments. As the Court in *Dowling* explained,

> the Attorney Registration and Disciplinary Commission (ARDC) has issued a Client Trust Account Handbook (ARDC 2001) (Handbook) in which it appears to interpret this court's decision in *Taylor* to recognize the validity of advance payment retainers. The purpose of the Handbook is to act as a guide to lawyers concerning the creation and maintenance of client trust accounts.

---

[4] *See*, e.g., Cook County Circuit Court G.A.O. 2020-07, as amended and effective March 1, 2022, available at https://www.cookcountycourt.org/LinkClick.aspx?fileticket=HHs1y012D9w%3d&portalid=0.

*Dowling*, 226 Ill. 2d at 289. Later, in 2020, the ARDC issued what it called the "Illinois ARDC Statement on Racism," which interpreted the Illinois Supreme Court Rules, including without limitation the Rules of Professional Responsibility, and explained to lawyers in Illinois their obligations towards anti-racism.

Clearly, then, the ARDC does not solely have a role disciplining attorneys. It also, as Dowling explains, *guides* attorneys towards how to conform with the Rules: "The purpose of the Handbook is to **act as a guide to lawyers** concerning the creation and maintenance of client trust accounts" *Dowling*, 226 Ill. 2d at 289. It is also expected that lawyers will comply with the Rules. "A lawyer, as an officer of the court, is duty-bound to uphold the rules in the Code. The title of Canon 1 (107 Ill.2d Canon 1) reflects this obligation: 'A lawyer should assist in maintaining the integrity and competence of the legal profession.' A lawyer may not choose to circumvent the rules by simply asserting that his client asked him to do so." *In re Himmel*, 125 Ill. 2d 531, 539 (Ill. 1988). *See also In re Vrdolyak*, 137 Ill. 2d 407, 422 (Ill. 1990) ("the Code [of ethics] operates with the force of law."

In short, the ARDC does have the ability to stop attorneys from engaging in transphobic discrimination by simply telling attorneys it is a violation of the ethics rules to do so. The ARDC does have the ability to stop Plaintiff from being harassed for being transgender by not outing her publicly to everyone who looks on the ARDC website.

IV. **The Balance of Harms Favors Plaintiff**

On the other hand, absolutely no harm will result to the ARDC from an order requiring them to comply with *Bostock, Whittaker,* and *Sommerville*. *Tay* is instructive here:

> The balance of harms tips in Plaintiff's favor. The Court will only direct Defendants do their job: protect Plaintiff from abusive staff and prisoners and house her appropriately based on an *individualized determination* of her needs. The Court has no intention of interfering with the operations IDOC. It is IDOC's responsibility to provide for the safety of all inmates within its custody, and the Court is not convinced in this case that it has lived up to that responsibility *with respect to Plaintiff.* The Court is not saying that IDOC cannot make decisions regarding where individual inmates are to be housed, just that those decisions need to be based on valid factors[.]

457 F. Supp. 3d at 688. The same is true here. This Court need not interfere with the operations of the ARDC, or order the prosecution of a specific attorney for misconduct. Instead, this Court would be telling the ARDC that it *must* do its job. The ARDC's job as a state agency is to protect the public as a whole from attorney misconduct, and that misconduct should include anti-trans discrimination which threatens the integrity of the legal system. In fact, by creating a legal system where clients of transgender attorneys are faced with an additional hurdle – that of their counsel's gender identity – the ARDC has been doing exactly the opposite of its job. Instead of protecting the public, the ARDC has been actively harming the public, transgender and cis alike. The Plaintiff asks only that these policies be set aside.

**Conclusion**

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter an order granting the following relief:

1. Enjoining and prohibiting the Defendants from publicizing or using Plaintiff's pre-transition "deadname" without her consent;

2. Enjoining and prohibiting the Defendants from enforcing Illinois Rule of Professional Conduct 8.4 in a manner which excludes "gender identity and expression" from prohibition on sex discrimination therein;

3. For whatever additional relief this Court deems appropriate and just under the circumstances.

        Respectfully Submitted,

        /s/ Sheryl Ring
        Sheryl Ring, Esq.

Sheryl Ring, Esq. #6311043/#62447
518 South Route 31, Suite 113
McHenry, Illinois 60050
(847) 975-2643
sheryl@sherylringlaw.com


I, Sheryl Ring, state and affirm under penalty of perjury pursuant to the laws of the United States that the facts set forth herein are true and correct to the best of my knowledge and belief.

Dated: March 1, 2022         /s/ Sheryl Ring

Exhibit A: Illinois Rule of Professional Conduct 8.4

It is professional misconduct for a lawyer to:

(**a**) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another.

(**b**) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects.

(**c**) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(**d**) engage in conduct that is prejudicial to the administration of justice.

(**e**) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law.

(**f**) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law. Nor shall a lawyer give or lend anything of value to a judge, official, or employee of a tribunal, except those gifts or loans that a judge or a member of the judge's family may receive under Rule 65(C)(4) of the Illinois Code of Judicial Conduct. Permissible campaign contributions to a judge or candidate for judicial office may be made only by check, draft, or other instrument payable to or to the order of an entity that the lawyer reasonably believes to be a political committee supporting such judge or candidate. Provision of volunteer services by a lawyer to a political committee shall not be deemed to violate this paragraph.

(**g**) present, participate in presenting, or threaten to present criminal or professional disciplinary charges to obtain an advantage in a civil matter.

(**h**) enter into an agreement with a client or former client limiting or purporting to limit the right of the client or former client to file or pursue any complaint before the Illinois Attorney Registration and Disciplinary Commission.

(**i**) avoid in bad faith the repayment of an education loan guaranteed by the Illinois Student Assistance Commission or other governmental entity. The lawful discharge of an education loan in a bankruptcy proceeding shall not constitute bad faith under this paragraph, but the discharge shall not preclude a review of the lawyer's conduct to determine if it constitutes bad faith.

**(j)** violate a federal, state or local statute or ordinance that prohibits discrimination based on race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status by conduct that reflects adversely on the lawyer's fitness as a lawyer. Whether a discriminatory act reflects adversely on a lawyer's fitness as a lawyer shall be determined after consideration of all the circumstances, including: the seriousness of the act; whether the lawyer knew that the act was prohibited by statute or ordinance; whether the act was part of a pattern of prohibited conduct; and whether the act was committed in connection with the lawyer's professional activities. No charge of professional misconduct may be brought pursuant to this paragraph until a court or administrative agency of competent jurisdiction has found that the lawyer has engaged in an unlawful discriminatory act, and the finding of the court or administrative agency has become final and enforceable and any right of judicial review has been exhausted.

**(k)** if the lawyer holds public office:

    **(1)** use that office to obtain, or attempt to obtain, a special advantage in a legislative matter for a client under circumstances where the lawyer knows or reasonably should know that such action is not in the public interest;

    **(2)** use that office to influence, or attempt to influence, a tribunal to act in favor of a client; or

    **(3)** represent any client, including a municipal corporation or other public body, in the promotion or defeat of legislative or other proposals pending before the public body of which such lawyer is a member or by which such lawyer is employed.

Adopted July 1, 2009, effective January 1, 2010.

**Comment**

[1] Lawyers are subject to discipline when they violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so or do so through the acts of another, as when they request or instruct an agent to do so on the lawyer's behalf. Paragraph (a), however, does not prohibit a lawyer from advising a client concerning action the client is legally entitled to take.

[2] Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offenses carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving "moral turpitude." That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.

> [3] A lawyer who, in the course of representing a client, knowingly manifests by words or conduct, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status, violates paragraph (d) when such actions are prejudicial to the administration of justice. Legitimate advocacy respecting the foregoing factors does not violate paragraph (d). A trial judge's finding that peremptory challenges were exercised on a discriminatory basis does not alone establish a violation of this Rule.
>
> [4] A lawyer may refuse to comply with an obligation imposed by law upon a good-faith belief that no valid obligation exists. The provisions of Rule 1.2(d) concerning a good-faith challenge to the validity, scope, meaning or application of the law apply to challenges of legal regulation of the practice of law.
>
> [5] Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer's abuse of public office can suggest an inability to fulfill the professional role of lawyers. The same is true of abuse of positions of private trust such as trustee, executor, administrator, guardian, agent and officer, director or manager of a corporation or other organization.

Ill. Sup. Ct. R. 8.4

**Certificate of Service**

The undersigned certifies under penalty of perjury that the attached Motion for Temporary Restraining Order was served on all counsel of record via the CM/ECF system on March 1, 2022.

March 1, 2022 /s/ Sheryl Ring